# Austin L. Burgess, Inc. *vs.* Lumbermens Mutual Casualty Company.

### Suffolk. February 2, 1965. — March 2, 1965.

Present: Wilkins, C.J., Spalding, Cutter, Spiegel, & Reardon, JJ.

*Insurance,* Payroll insurance. *Robbery.*

At the trial of an action of contract on a policy issued by the defendant insuring the plaintiff against "loss of . . . payroll . . . caused by robbery . . . from a custodian performing any of his regular duties with such payroll" and defining "robbery" as including "the felonious taking of insured property . . . by any . . . overt felonious act committed in . . . [the presence of a custodian] and of which he is actually cognizant," evidence of the circumstances attendant upon the disappearance of a payroll, while a custodian was transporting it from a bank to the plaintiff's office in the course of his regular duties, from the open trunk of the custodian's automobile where he had placed it upon stopping to change a flat tire and from which he first saw it was gone when he took the flat tire to the trunk did not show that the custodian was "actually cognizant" of a robbery committed in his presence, and the defendant's motion for a directed verdict should have been granted.

Contract. Writ in the Superior Court dated February 18, 1960.

The action was tried before *Brogna, J.*

*David D. Leahy* for the defendant.

*Louis Kobrin,* for the plaintiff, submitted a brief.

Spiegel, J. On a policy of insurance issued by the defendant, the plaintiff seeks to recover for loss of a payroll. The jury returned a verdict for the plaintiff. The case is here on the defendant's exceptions to the admission of certain evidence, to the denial of its motion for a directed verdict, and to the instructions to the jury.

We summarize the pertinent evidence. In a policy of insurance issued to the plaintiff, the defendant agreed "[t]o pay for . . . direct loss of or damage to payroll, occurring either outside or within the premises, caused by robbery or attempted robbery from a custodian performing any of his

regular duties with such payroll.'' The policy defines the word ''robbery'' to mean ''the felonious taking of insured property (1) by violence inflicted upon a custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he is actually cognizant, provided such other act is not committed by an officer, partner, or employee of the insured; (4) from the person or direct care and custody of a custodian who has been killed or rendered unconscious by injuries inflicted maliciously or sustained accidentally.''

One Moreau (who was deceased at the time of trial), an employee of the plaintiff, was responsible for transporting the plaintiff's payroll from a bank to the plaintiff's office ''a couple of times a week.'' On November 13, 1959, Moreau went to the bank for this purpose in his own car. The bank teller gave him the payroll in a paper bag. As Moreau emerged from the bank, he ''saw a suspicious looking person standing there.'' Moreau entered his car and placed the bag between his back and a cushion. He ''started [to drive the car] out of the parking space and noted . . . [that it] had a flat tire.'' He stopped the car, took out the payroll bag, ''opened the trunk of the car and placed the bag in the rear of the trunk and covered it with . . . [his] hat.'' He then ''removed the spare tire and put it against . . . [the] rear bumper.'' He ''jacked up the right rear wheel . . . [but the] car started to skid off the jack.'' He thereupon ''released . . . [the jack] and took . . . a tire chain out of the trunk.'' He ''looked to see if anyone was around . . . and there was nobody in sight.'' He then put the tire chain ''under the right front wheel.'' ''The trunk door was open [during] all this time.'' Moreau then ''jacked up the car again . . . removed the flat [tire] . . . [and] put the spare tire on.'' He took the flat tire to the trunk, and upon removing his hat therefrom, he saw that the bag of money was gone. At that moment a motorcycle policeman was going by, and Moreau ''told him what [had] happened.'' In the course of a subsequent investigation by the police, an examination of the flat tire revealed

that "the valve was removed from the valve stem and [that] the tire itself was" intact.

The plaintiff appears to rely solely upon the provision of the insurance policy which defines "robbery" as "the felonious taking of insured property . . . by any other overt felonious act committed in . . . [the custodian's] presence and of which he is actually cognizant . . . ." It seems clear that, even if there is evidence that a robbery was "committed in . . . [Moreau's] presence," there is no evidence that he was "actually cognizant" of it. He had no actual knowledge of a felonious act during its commission and before the thief, if any, had completely disappeared with the payroll. His conclusion that a robbery had been committed was only an afterthought. Therefore, the defendant's motion for a directed verdict should have been granted. See *Sklar* v. *Globe Indem. Co.* 129 Cal. App. 439, 441; *Cole* v. *Hartford Acc. & Indem. Co.* 242 Iowa, 416, 422–424; *Ashcraft* v. *United States Fid. & Guar. Co.* 255 S. W. 2d 485, 487 (Ky.); *Citizens Loan & Inv. Co.* v. *St. Paul Mercury Indem. Co.* 195 Minn. 515, 518; *London* v. *Maryland Cas. Co.* 210 Minn. 581, 586; *Buffalo Smoketeria, Inc.* v. *Metropolitan Cas. Ins. Co.* 143 Misc. (N. Y.) 894, 895–896; *Lorenz* v. *Indemnity Ins. Co.* 197 Misc. (N. Y.) 21, 22; Appleman, Insurance Law and Practice, § 3179, p. 327. It is thus unnecessary to consider the questions raised by the other exceptions.

*Exception to denial of motion for*
*directed verdict sustained.*
*Judgment for the defendant.*