N. H. MICHAELS v. THE STATE.

No. 15121. Delivered April 20, 1932.

554

The opinion states the case.

*Davenport & Crain,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for robbery, punishment eight years in the penitentiary.

The indictment alleged that appellant made an assault upon C. Madison, and that by said assault and by violence to Madison, and by putting him in fear of life and bodily injury, appellant fraudulently took from the possession of Madison an automobile, which was alleged to have been the property of Madison.

There was situated in Wichita Falls a storage garage known as "March Auto Storage," which was operated by T. R. Jordan. Madison, a negro boy 18 years old, was an employe of Jordan, and had charge of the garage at night. Madison testified, in substance, as follows: Between nine and ten o'clock on the night of September 10, 1931, a Mr. Keys drove into the garage in a Chevrolet coupe and left the same for storage. Before Madison had put the car away for the night appellant and Jack Burgess came into the garage. Burgess asked Madison if the latter knew where they could get some whisky. Madison told them no. Burgess pointed a pistol at Madison and ordered him to get in a Ford sedan. It had a flat tire and the key was out of it. Burgess then asked if all the cars were locked and Madison told him "Yes," although this was not the case. Appellant discovered the key was in the Chevrolet which had just been driven in. About this time someone walked by the garage door and Madison started towards the door, whereupon Burgess said to him, "If you run, I'll kill you." Burgess then ordered Madison to get in the Chevrolet, and when a little slow in his movements, was cursed by Burgess. Appellant got in the car under the driving wheel. Burgess got in next to the right hand

door, still having the pistol in his hand, and Madison was between them. Appellant drove the car to a street intersection where he stopped for a red traffic light. Madison saw someone at a filling station and yelled for help. When he did this Burgess struck him between the eyes with the gun. Madison and Burgess then engaged in a scuffle over the pistol. Some officers saw the commotion in the car and heard Madison's cry for help, and pursued the car several blocks, finally bringing it to a stop after shooting one of the casings. Upon arresting the parties a pistol was found on each of them. In their testimony the officers supported Madison to the effect that he was scuffling and fighting with Burgess, and was "bloody all over and had a gash cut across his forehead." Appellant testified that he and Burgess went to the garage and asked Madison if he knew where they could get some whisky and were told that he had some at his house he could get for them, and that they all got in the car at Madison's suggestion to go for the whisky. Appellant denied that he saw Burgess strike Madison with the gun, or that he had noticed they were scuffling over the gun. He said they stopped as soon as they discovered the officers were after them. Appellant gave a rather fanciful explanation as to why the negro called for help, one which evidently did not make a very serious impression on the jury.

By bills of exception 1 and 2 appellant raises the question of a variance between the proof and the averments in the indictment upon the claim that the evidence shows that the car was taken from the possession of Keys, the real owner, and that Madison's relation to it was not such as constituted him the special owner under the law. Upon that issue the evidence is substantially as follows: Madison testified that he was working at the garage from seven o'clock in the evening until seven in the morning, and that no one was there with him during those hours; that it was his duty to store cars during the time he was on duty; that he was in charge of the car which was taken, and did not give his consent to the taking; that he got in the car and permitted it to be taken because he was afraid he would be shot. On cross-examination Madison testified: "Nobody else was there at night. Sometimes Mr. Jordan's boy would come around at night. No one else was there that night and no one came after this happened except Mr. Jordan. No one was there that night before but me. I did not manage the garage, I was just there. I worked there. I was the manager during that time; I was getting a salary. I wasn't the manager—I was working. Mr. Jordan is the manager of the garage. Mr. Jordan owned the garage and he was the boss of it. I was not the boss of the garage. I did what Mr. Jordan told me to do. He was in charge of the garage. I was there, but I wasn't the boss."

Mr. Jordan testified that Madison was working for him; that when he would leave the garage Madison would take over the place, and would be left in charge; that the place stayed open all night, and that Madison

would be left in charge of the business. Jordan said, "He (Madison) had control of the garage if *nothing* serious happened and he couldn't get hold of me. * * * He did anything I told him to do around the garage. He was not the manager of the garage. Anything I did not give him instructions on he did it to the best of his ability. *He has as much authority as I did when I left.*" Under the undisputed evidence it occurs to us that no issue of variance was raised. Appellant's position here is very much the same as that advanced in Reese v. State, 91 Texas Crim. Rep., 457, 239 S. W., 619, where it was insisted that if any offense was committed it was theft and not robbery, but the opinion did not sustain accused's contention. The case is almost directly in point. See, also, Guyon v. State, 89 Texas Crim. Rep., 287, 230 S. W., 408; Holland v. State, 87 Texas Crim. Rep., 89, 219 S. W., 458; Lamater v. State, 38 Texas Crim. Rep., 249, 42 S. W., 304.

It follows from what has been said that we find no error in the court declining to give the special requested charge on the question of possession as set out in bill of exception No. 3.

Complaint is brought forward in bill of exception No. 4 as follows: Madison was asked upon cross-examination if he was not fired for letting a car out that he had been told not to let out. Objection by the state that it was immaterial was sustained. The bill shows that witness would have answered that Mr. Morton discharged him because he took out a car he was not supposed to use. Appellant claims that the evidence was material because appellant was contending that Madison voluntarily left the garage in the car to go in search of whisky. The bill is silent as to whether the incident inquired about occurred before or after the robbery. We are inclined to the view that the proposed evidence was properly excluded. Its materiality is questioned, and its probative force is speculative. As we understand the record, Madison did not work for Morton until after the robbery.

It appears from bill of exception No. 5 that Morton was asked whether or not he knew it to be a fact that Madison owned two guns, and that he kept one at the garage all the time. Objection to the question was sustained. The bill is defective in not showing what the witness would have answered.

Bills of exception 6 and 7 relate to objection to the court's charge. We have examined them carefully and fail to discover any defects in the charge in the particulars complained of in said bills.

The judgment is affirmed.

*Affirmed.*